## LAMB v. MUTUAL RESERVE FUND LIFE ASS'N.

### (Circuit Court, E. D. Pennsylvania. February 13, 1901.)

### No. 44.

1. LIFE INSURANCE—VESTED INTEREST OF BENEFICIARY.

The beneficiary in a life policy has no vested interest in it during the life of the insured; it being issued by an association doing business under Laws N. Y. 1883, c. 175, § 18, providing that membership in the association shall give a member the right at any time, with the consent of the association, to make a change in his beneficiary, without requiring the consent of the beneficiary.

2. SAME—SUBSTITUTION OF POLICY.

The substitution of a new life policy for an old one, in accordance with an agreement therefor, is completed, the old policy being surrendered, and the new policy being delivered by mail without payment of premium being exacted, though the latter provides that it shall not take effect till delivery in person and payment in cash, while the old policy is in full force; the provision being one for the benefit of the insurance company, which it was not bound to insist on, and which it waived by delivering the policy as it did.

3. SAME—CONSIDERATION.

The consideration recited in an agreement for substitution of life policies, that the surrender of the old policy is in consideration of the issuance of a new one on different terms, is sufficient.

Geo. T. Hunsicker, for plaintiff.
J. W. Bayard and J. G. Johnson, for defendant.

DALLAS, Circuit Judge. From the statement of claim it appears that this suit has been brought to recover $8,267.96, with interest thereon from August 16, 1900, upon two causes of action, which are

stated, in substance, as follows: (1) The defendant issued to William W. Lamb, plaintiff's husband, a certificate of membership, numbered 15,975, and dated October 5, 1893, whereby the defendant agreed to pay to the plaintiff, the beneficiary therein named, the sum of $5,000 within 90 days after the receipt of satisfactory evidence of the death of the said William W. Lamb. The statement alleges that the said William W. Lamb duly made all the payments which he was required to make, and that he and the plaintiff performed all things on his and her part to be fulfilled, according to the tenor of the said certificate, and that the said William W. Lamb died on February 15, 1900, while said certificate was in full force and effect. (2) The second count alleges that the defendant on January 17, 1900, solicited and procured of the said William W. Lamb a certain other agreement of insurance, whereby, in consideration of an assignment by the said William W. Lamb to the defendant of a portion equal to $1,-561.35 of the $5,000 insurance represented by the certificate before mentioned, for the maintenance of the reserve required on the basis of the actuaries' table of mortality, with interest at 4 per cent., as well as in consideration of the formal delivery for cancellation of said certificate, the defendant agreed to deliver a substituted certificate of membership for the sum of $5,000, payable to the plaintiff, the beneficiary, after the death of said William W. Lamb, less the sum represented by said assignment, or any part thereof, with interest thereon remaining unpaid at said death, and also another original certificate for $5,000, payable to the plaintiff after the death of said William W. Lamb, upon payment of such part of the premiums respectively due, upon delivery of said certificates in person to the said William W. Lamb; that on the same day, January 17, 1900, William W. Lamb, without plaintiff's knowledge or consent, delivered to plaintiff two applications for insurance, one of which contained the said assignment, and delivered to the defendant said certificate No. 15,975, to be canceled upon delivery in person to him of said substituted certificate and of the additional original certificate, for $5,000 each, and the payment in cash of the first premiums respectively due thereon; that William W. Lamb was then in good health, and subsequently passed a successful medical examination by defendant, and on January 20, 1900, paid $12.78, due upon the formal delivery of said substituted certificate in person; that he continued in good health until 11:20 o'clock p. m. of January 21, 1900, when he was suddenly stricken with apoplexy, became unconscious, resulting in total paralysis, and remained in such condition until his death on February 15, 1900; that on January 23, 1900, the defendant mailed to the said William W. Lamb certificate No. 385,328, but refused to deliver the other certificate contracted for as aforesaid, on account of the subsequent illness of the said William W. Lamb. The statement avers that William W. Lamb entered into the agreement of January 17, 1900, "by reason of the fraudulent concealment on the part of the defendant of the following facts, to wit: Said defendant was not carrying out its contracts with its members, was not maintaining a reserve fund in compliance therewith, had no reserve, and was therefore conducting business contrary to the insurance laws of Pennsylvania, and would

be proceeded against unless it forthwith provided the necessary reserve on said certificates, and was compelled to reduce the amount of insurance payable at death in a sum sufficient to provide and maintain the reserve required by law. The said William W. Lamb was ignorant of said concealed facts at, prior, and subsequent to the date of said agreement of January 17, 1900." The statement further avers "that defendant resorted to a fiction, in that it (defendant) pretended to loan to the said William W. Lamb an assumed reserve, which his certificate would have earned after seventeen years, as an ordinary insurance policy on the level premium plan, taking as security therefor, until paid off from future premiums, a lien on said insurance by means of said assignment, to which plaintiff was not a consenting party, as aforesaid; that said William W. Lamb was paying under policy No. 15,975 a mortuary assessment of $30.15 every two months at the date of said assessment, and would be compelled to pay $40.85 every two months under said substituted certificate"; that "defendant, having informed said William W. Lamb that he had successfully passed a medical examination, was bound, in good faith, after his illness had set in, to perform said agreement of January 17, 1900, as an entirety; that defendant, having performed part thereof during said illness, waived the requirements of said policies as to delivery in person, and is liable under said agreement for the sum of $5,000, less the premium due on said undelivered certificate, in addition to $3,267.96 due under said substituted certificate No. 385,328." The statement then alleges performance by William W. Lamb and by the plaintiff of all things on their part to be fulfilled, according to the terms of said certificate and agreement, and thus concludes:

"Yet the defendant has not performed its covenants, in this: that, although often requested, it did not, within ninety days after the receipt of satisfactory evidence of the death of said William W. Lamb, or at any time, pay to the plaintiff the sum of $8,267.96, or any part thereof."

The first of the plaintiff's counts is based upon certificate No. 15,975, and rests upon its averment that when William W. Lamb died that certificate was "in full force and effect." This the defendant denies, and in support of that denial the affidavits filed on its behalf (which traverse the charges of fraud, concealment, etc.) set forth that all the agreements between the parties were reduced to writing, and that policy No. 385,328 was issued in substitution for certificate No. 15,975; and it is argued that it thus appears, and for the present purpose conclusively, that the only contract of insurance between the defendant and William W. Lamb which was in force at the time of his death is policy No. 385,328. It is conceded that upon this policy there is due the principal sum of $3,267.96, but plaintiff claims judgment for $5,000, with interest; that being the amount of the original certificate, No. 15,975, which her learned counsel insists "was still in force, for the following reasons: (1) Want of power authorizing a change without plaintiff's consent; (2) the substitution was not perfected; (3) the refusal to issue additional insurance, applied for January 17, 1900, worked a rescission of the agreement for substitution; (4) want of consideration for the substitution if the issuance of the additional policy was not contracted by the assured and defendant."

To refer in detail to all parts of the affidavits which bear upon these points would involve an unnecessary expansion of this opinion. The question raised by the first one is whether the plaintiff had a vested right in or under certificate No. 15,975, which precluded her husband from surrendering it, as he did, without her consent; and this question is, I think, sufficiently anticipated and answered by the following statement of the supplemental affidavit of defense:

"The defendant is an association incorporated under the laws of the state of New York, transacting business of life insurance upon the co-operative or assessment plan, as defined in said laws. By the statute of said state (chapter 175, § 18, of the Laws of 1883) in force when the original certificate of membership, No. 15,975, was issued to William W. Lamb, husband of the plaintiff, it is provided as follows: 'Membership in any such corporation, association or society shall give to any member thereof the right at any time, with the consent of such corporation, association or society, to make a change in his payee or payees or beneficiary or beneficiaries without requiring the consent of such payee or beneficiary.' The defendant is advised by counsel, and therefore avers, that by virtue of said provision the plaintiff had no vested right in said certificate of membership, but that the said William W. Lamb in his lifetime could, without her consent, make any contract with regard to said certificate of membership which might seem to him fit, with the consent of the defendant."

I am of the opinion that the exclusive control over the contract of insurance given to the insured by the statutory provision set out in the foregoing statement makes impossible the existence of a permanent or vested interest in the beneficiary during the lifetime of the insured. Hopkins v. Assurance Co., 40 C. C. A. 1, 99 Fed. 199–202.

I cannot sustain the plaintiff's second point. The decision in Assurance Co. v. McElroy, 28 C. C. A. 365, 83 Fed. 631, upon which she relies, lends it no support. Not only does the affidavit allege that it was agreed that certificate No. 15,975 would be surrendered, but also that it was in fact surrendered. It states that:

"Defendant accepted said application of the said William W. Lamb [for the substituted policy], and, upon the delivery of said certificate No. 15,975 [the original one] and of said application to the defendant, it issued to said William W. Lamb, in substitution therefor, its certificate No. 385,328."

It must therefore be now assumed that the defendant issued the new policy in substitution for the old one, and in pursuance and consummation of an agreement that this should be done, which had already been so far executed that the old policy had been actually surrendered. Under these circumstances, I do not regard it as of any importance that the new policy was delivered by mail, and without exacting payment of premium, notwithstanding its provision "that it shall not take effect until delivery in person and payment in cash while policy 15,975 is in full force." This provision was inserted for the defendant's benefit, and it was not bound to insist upon it. It waived it by delivering the policy as it did; and certainly then, if not when the agreement and surrender were made, the old policy ceased to be a living one.

Point 3 of the plaintiff's brief assumes the existence of a contract which obliged the defendant to deliver the additional insurance therein referred to; but this is explicitly denied by the affidavits, and the effect of this denial is twofold: It makes this point unavailing as to

the plaintiff's demand for judgment for the full amount of her first claim, and it absolutely bars the entry of any judgment at this time upon her second claim.

There is no foundation for the fourth proposition. The contention that, unless an additional original policy was contracted for, there was no consideration for the substitution of policy No. 385,328 for policy No. 15,975, is disposed of by the fact that the writing itself, which the affidavits allege embodied the whole agreement, expressly recites that the surrender of the old policy was made in consideration of the issuance of a new one (No. 385,328) upon different terms; and that this expressed consideration was a sufficient one I do not doubt.

"The defendant admits its liability to pay in full settlement for all claims and demands upon the substituted policy, which was the only policy it admits was in existence or to which the plaintiff was in any way entitled upon the death of her husband, the sum of $3,267.96. It tendered this sum before it became due, but the plaintiff declined to receive it. She is therefore not entitled to interest, but only to the principal sum mentioned." The plaintiff is accordingly entitled to judgment for $3,267.96, and, I think, for interest thereon from the date at which, under the terms of certificate No. 385,328, that sum became due and payable. As at present advised, I am of opinion that the affidavits do not sufficiently allege the facts necessary to warrant the court in holding that interest ought not to be allowed; but the question has not been argued, and, if desired, I will hear counsel upon it. If, however, my present understanding of the matter shall be acquiesced in, an assessment may be prepared in accordance therewith, and thereupon judgment will be entered in conformity with this opinion.